UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

| | |
|---|---|
| BOSTON EXECUTIVE SEARCH ASSOCIATES, INC., | Civil Action No.: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| SIMPSON THACHER & BARTLETT LLP, | **JURY TRIAL DEMANDED** |
| Defendant. | |

----------------------------------x

Plaintiff Boston Executive Search Associates Inc., for its complaint herein against Defendant Simpson Thacher & Bartlett LLP, by its undersigned attorneys, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action to recover a fee due to Plaintiff Boston Executive Search Associates, Inc. for the reasonable value of the professional services it provided to Defendant Simpson Thacher & Bartlett LLP.

2. In March 2017, in response to the Defendant's request, Plaintiff Boston Executive Search Associates, Inc. presented Attorney Michael Torkin to the Defendant as a potential lateral partner hire. Attorney Torkin, a partner at the high-powered firm of Sullivan & Cromwell, has a successful legal practice which generates millions of dollars in fees each year advising private equity and hedge fund investors. Attorney Torkin, and his profitable legal practice, was precisely the type of attorney and practice sought by the Defendant.

3. After the Plaintiff introduced the parties to one another and arranged their initial meeting, the Defendant and Attorney Torkin determined that they themselves would manage the process of working out whether they were compatible. When Plaintiff spoke with Defendant during the hiring process, it was assured that negotiations with Attorney Torkin were ongoing and positive.

4. In November 2017, Defendant Simpson Thacher & Bartlett LLP announced that it had hired Attorney Torkin as a partner in its New York office.

5. Plaintiff Boston Executive Search Associates, Inc. contacted Defendant Simpson Thacher & Bartlett LLP to congratulate it on the hiring of Attorney Torkin and the acquisition of his legal practice. Defendant stands to reap millions of dollars in profit from the enormous legal fees it will receive each year from Attorney Torkin's legal practice.

6. Plaintiff Boston Executive Search Associates, Inc. also requested that Defendant pay Plaintiff's fee for the placement, which is twenty-five percent (25%) of Attorney Torkin's projected first-year compensation. The fee charged by the Plaintiff is the standard fee charged by legal recruiters.

7. Based on conversations that the Plaintiff had with the Defendant in March 2017, the Plaintiff believes that Attorney Torkin's first-year compensation will be no less than $3.75 million. Consequently, the Plaintiff is entitled to a fee of no less than $937,500.

8. In November 2017, the Plaintiff sent the Defendant a copy of its standard Agreement for Placement Services which the Defendant has not executed. Although there was no written contract between the parties, the Plaintiff is entitled to the reasonable value of the services it provided to the Defendant since it performed the services in good faith, the Defendant accepted the services, there was an expectation that the Plaintiff would be compensated, and the Plaintiff's fee is the fee normally charged by others in the industry.

9. Despite having received the very substantial benefits of the services provided by the Plaintiff, Defendant Simpson Thacher & Bartlett LLP has refused to pay for the fair and reasonable value of those services. To date, the only reason that the Defendant has given for its refusal to pay the Plaintiff is the absence of a written contract, which is not a valid reason under

2

119900477_1

New York law.

10. In addition to a claim for quantum meruit, the Complaint includes claims for breach of contract and unjust enrichment.

## JURISDICTION AND VENUE

11. The Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a) since the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

12. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(a)(2), since a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

13. Plaintiff Boston Executive Search Associates, Inc. ("ESA") is a Massachusetts corporation which has a principal place of business at 1776 Massachusetts Avenue, Cambridge, Massachusetts 02140. ESA is a legal recruiting firm that specializes in lateral partner recruiting and placements into top-tier regional, national, and international law firms.

14. Defendant Simpson Thacher & Bartlett LLP ("Simpson Thacher") is a New York limited liability partnership whose principal place of business is located at 425 Lexington Avenue, New York, New York 10017. Simpson Thacher is an international law firm and employs over 900 attorneys in eleven offices worldwide. The firm is reported to be among the most profitable large law firms in the world on a per-partner basis. In 2016, Simpson Thacher reportedly had gross revenues of approximately $1,301,500,000 with estimated profits of $3,505,000 per partner.

## THE FACTS

A. **The Services Provided By A Legal Recruiter**

15. The services provided by partner level legal recruiters are well-known. A partner

3

level legal recruiter identifies, recruits, qualifies, introduces, and assists in the hiring of prospective lateral candidates by law firms where their experience, skills, and expertise will be highly valued. In order to be successful, a partner level legal recruiter must thoroughly understand the complex process of a successful lateral transaction from the perspective of the hiring firm and from the vantage point of the lateral partner. The recruiter must be familiar with the macro and micro trends of numerous legal markets and specialties to identify how a particular candidate will be compatible with a specific law firm. The recruiter must have a large knowledge base of law firms and attorneys and must be able to identify and attract those who are open to moving their practices. He or she must be able to grasp the culture of a law firm, including its business goals, client base, productivity, management structure, compensation system, billable hour expectations, reputation, productivity, and values. Likewise, the recruiter must know the candidate's level of sophistication of practice, client base, work habits, business savvy, likelihood he or she will consider a lateral move, and career goals. The recruiter must be able to see why the potential match is advantageous with potential value to both parties and be able to articulate it convincingly.

16. The value provided to a law firm by a skillful and experienced partner level legal recruiter, like ESA, is immense. A high-quality lateral partner typically will add to the depth and breadth of service offerings, boost the law firm's annual profits, strengthen and grow its client base, and reinforce its culture. The standard fee charged by legal recruiters for successfully placing a lateral partner into a law firm is twenty-five percent (25%) of the attorney's projected first-year compensation.

B. **Prior Presentations Made To Simpson Thacher**

17. Although this action arises from an introduction made by ESA in March 2017, ESA had presented a number of potential lateral partner candidates to Simpson Thacher in the preceding

4

119900477_1

years. ESA had presented potential lateral partner hires to Richard I. Beattie, Esq., Senior Chairman of the Firm; Thomas H. Bell, Esq., Founder of the Private Funds practice; Paul C. Curnin, Esq., Co-Head of the Firm's Litigation Department; Jonathan K. Youngwood, Esq., Co-Head of the Firm's Litigation Department; Kevin Arquit, Esq., former partner and former Head of the Competition Practice; Robert Rene Rabalais, Esq., Managing Partner of the Firm's Houston office; Jin Hyun Park, Esq., Leader of the Firm's Korea Practice; Christopher Wong, Esq.; Celia Lam, Esq., Head of the China Practice; Douglas C. Markel, Esq., former partner; among others.

18. In February 2016, a legal recruiter at ESA spoke with Sandeep Qusba, Esq., the Head of Simpson Thacher's Bankruptcy and Restructuring Practice.

19. Mr. Qusba was very familiar with ESA and the services provided by a legal recruiter generally. In 2006, Mr. Qusba was an attorney working at O'Melveny & Myers LLP before he moved his practice to White & Case LLP. ESA, with the expressed consent of Mr. Qusba, was the legal recruiter that presented Mr. Qusba to White & Case LLP as a potential lateral partner. Mr. Qusba was hired by White & Case LLP and, based on ESA's presentation, ESA received its fee for its services.

20. In their conversation, the ESA recruiter told Mr. Qusba about a partner in another firm who had expressed interest in the possibility of moving his practice to Simpson Thacher. Mr. Qusba told the recruiter that the firm had no interest in this particular candidate.

21. In March 2016, the ESA recruiter again contacted Mr. Qusba with another potential candidate that was rejected by Mr. Qusba. However, Mr. Qusba encouraged the recruiter to contact him in the future with possible introductions.

119900477_1

## C. Simpson Thacher's Request To ESA For An Introduction

22. In March 2017, the ESA recruiter again spoke with Mr. Qusba and told him of a potential candidate who had a restructuring practice that the recruiter believed would be a good fit for Defendant Simpson Thacher. Mr. Qusba said that Simpson Thacher was not interested in taking on a lateral partner with a banking centric restructuring practice but would be interested in receiving introductions of attorneys with a specialty in handling bankruptcy and restructuring matters for private equity and hedge funds.

23. In March 2017, the ESA recruiter sent an e-mail to Mr. Qusba in which he presented Attorney Michael Torkin as a potential lateral partner hire for Simpson Thacher. A true and correct copy of the e-mail sent to Mr. Qusba presenting Attorney Torkin is attached hereto as Exhibit A.

24. On April 6, 2017, Mr. Qusba acknowledged receipt of the ESA recruiter's e-mail introducing Attorney Torkin and left the recruiter a voicemail expressing an interest in communicating further with him about Attorney Torkin.

## D. Michael H. Torkin, Esq.

25. Michael H. Torkin, Esq. is a graduate of Osgoode Hall Law School in Toronto. He started working as an attorney in 1997 at Blake, Cassels & Graydon, a Canadian firm headquartered in Toronto. A year later, Attorney Torkin joined Shearman & Sterling in New York. He was elevated to partner status in 2007. Four years after that he moved to Sullivan & Cromwell, where he had a key role in the firm's first major bankruptcy court engagement as debtors' counsel to Eastman Kodak Co. in its Chapter 11 filing in January 2012.

26. In his practice at Sullivan & Cromwell, Attorney Torkin worked with companies in Chapter 11 proceedings, out-of-court restructurings and other financial reorganizations, as well as advising private equity and hedge fund investors in their acquisitions and investments. Besides his

6

work for Kodak, Attorney Torkin was also part of the teams that represented AT&T Inc. on its $950 million sale in 2012 of a majority stake in its Yellow Pages directory division and advised Canadian sportswear company Gildan Activewear Inc. earlier this year on its $88 million acquisition of bankrupt retailer American Apparel.

27. Attorney Torkin's legal practice was precisely the type of practice that had been described by Mr. Qusba. Attorney Torkin's practice generated substantial legal fees each year advising private equity and hedge funds. If Attorney Torkin moved that practice to Defendant Simpson Thacher, that firm would realize millions of dollars in profits annually.

E. **Events Leading To Attorney Torkin Being Hired By Simpson Thacher**

28. In April 2017, Mr. Qusba told the ESA recruiter that he was concerned that Simpson Thacher's partner compensation structure might be of concern to Attorney Torkin. Although the details of Simpson Thacher's partner compensation structure will not be fully disclosed until discovery in this action, Mr. Qusba represented that the partners at Simpson Thacher are paid in accordance with their lock-step system and based on their seniority within the firm. When Mr. Qusba learned that Attorney Torkin had been a partner for approximately twelve years, he told the ESA recruiter that Attorney Torkin could expect to receive an annual compensation of $3.75 million.

29. Mr. Qusba told the ESA recruiter that he did not want to "annoy" Attorney Torkin if the level of compensation that Simpson Thacher paid to its partners, and would pay to Attorney Torkin, would not be sufficient. Mr. Qusba asked the recruiter to check with Attorney Torkin and report back.

30. The ESA recruiter checked with Attorney Torkin and reported back to Mr. Qusba that Simpson Thacher's compensation structure was not expected to be a problem for him.

31. In early April 2017, the ESA recruiter also coordinated the initial meeting between Attorney Torkin and Mr. Qusba for April 13, 2017, after Attorney Torkin returned to New York from visiting home for the Passover holiday.

32. The ESA recruiter followed up after the initial meeting between Mr. Qusba and Attorney Torkin. The recruiter told Mr. Qusba that Attorney Torkin believed that their meeting went well. Mr. Qusba agreed and told the recruiter that he had been texting with Attorney Torkin in the few days following their meeting.

33. Periodically after introducing Attorney Torkin to Simpson Thacher, the ESA recruiter spoke with Mr. Qusba to see what assistance, if any, he could be to help the parties determine whether they were compatible. In each instance, the recruiter was assured that the negotiations with Attorney Torkin were positive and ongoing. The recruiter also periodically corresponded with Attorney Torkin who also assured him that the negotiations with Simpson Thacher were positive and ongoing.

34. Sometime around early November 2017, Simpson Thacher announced that it had hired Attorney Torkin as a partner in its New York office.

35. Simpson Thacher's hiring of Attorney Torkin, and the acquisition of his lucrative legal practice is advantageous for the firm. Plaintiff believes that Attorney Torkin's first-year compensation will be no less than $3.75 million, thus entitling the Plaintiff to a fee of at least $937,500.

36. Although it will not be fully clear until the Plaintiff undertakes discovery in this action, ESA believes that, after expenses, Simpson Thacher will receive millions of dollars in profits from the work that Attorney Torkin and other attorneys at Simpson Thacher undertake for the clients who follow him from Sullivan & Cromwell and for other clients to whom he provides

8

services. In addition, the reputation of the firm will be significantly enhanced by having Attorney Torkin as a member of the firm.

### F. Simpson Thacher Refuses To Pay A Fee To ESA

37. After learning that Simpson Thacher had hired Attorney Torkin, the ESA recruiter spoke with Mr. Qusba to congratulate him and to ask when Simpson Thacher intended to pay the fee owed to ESA for the placement. To the recruiter's surprise, Mr. Qusba sought to minimize ESA's role in the placement of Attorney Torkin and told the recruiter that he did not believe that ESA was entitled to a fee despite having been the procuring cause of his hiring.

38. Shortly thereafter, Mr. Phil Morimoto, the president of ESA, sent an e-mail to Mr. Qusba to discuss ESA's fee. Mr. Morimoto attached a copy of an invoice for ESA's services. He noted that the fee charged by ESA was the industry standard rate of twenty-five percent (25%) of Attorney Torkin's first-year compensation, which ESA assumes to be $3.75 million. Mr. Morimoto also sent Mr. Qusba the company's standard Agreement for Recruiting Services and requested that it be executed and returned to him.

39. In response to his e-mail, Mr. Morimoto received a telephone call from Mr. Michael Hersch, Simpson Thacher's Executive Director. Mr. Morimoto sent another e-mail to Mr. Hersch in which he explained that ESA had introduced Attorney Torkin to Simpson Thacher, was the procuring cause of his hiring, and was entitled to the standard industry fee for its services. Mr. Morimoto sent a copy of the company's standard Agreement for Recruiting Services to Mr. Hersch.

40. In a subsequent e-mail dated November 20, 2017, Mr. Hersch stated that Simpson Thacher did not believe that a fee was due to ESA because there was no written contract between the parties. Mr. Hersch also stated that the firm never anticipated that a fee would be payable.

41. On information and belief, when Mr. Qusba proposed to Simpson Thacher's management and to the partnership that the firm hire and admit Attorney Torkin to Simpson Thacher's partnership, he included the fact that ESA had introduced Attorney Torkin to the firm and that the company would be due a fee for those services. Simpson Thacher considered this information as part of its consideration to hire Attorney Torkin.

42. On information and belief, Simpson Thacher previously has hired attorneys through legal recruiters and is aware that the standard fee for such services is twenty-five percent (25%) of the attorney's first-year compensation.

43. On November 21, 2017, Mr. Morimoto sent an e-mail to Mr. William R. Dougherty, the Chairman of Simpson Thacher's Executive Committee. Mr. Morimoto explained again why ESA was entitled to a fee for the placement of Attorney Torkin.

44. In response to this e-mail, Mr. Morimoto eventually received an email from Mr. Alan Turner, a partner in Simpson Thacher's Litigation Department. Mr. Turner wrote Mr. Morimoto that Simpson Thacher would not pay ESA a fee for placing Attorney Torkin at the firm because there was no written contract between the parties.

### FIRST CLAIM FOR RELIEF
### (QUANTUM MERUIT)

45. Plaintiff Boston Executive Search Associates, Inc. restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

46. Plaintiff Boston Executive Search Associates, Inc. performed work, labor and services that it provided to Defendant Simpson Thacher & Bartlett LLP at the Defendant's request and in good faith.

47. Plaintiff Boston Executive Search Associates, Inc. had a reasonable expectation of

being paid the fair value of its services.

48.     Defendant Simpson Thacher & Bartlett LLP accepted the services provided by Plaintiff Boston Executive Search Associates, Inc. and reasonably should have believed that Plaintiff had an expectation to be paid the fair value for those services.

49.     The reasonable and fair value of the services performed by Plaintiff Boston Executive Search Associates, Inc. and provided to Defendant Simpson Thacher & Bartlett LLP is twenty-five percent (25%) of Attorney Torkin's first-year compensation, which is expected to be in excess of $3,750,000. Thus, Plaintiff Boston Executive Search Associates, Inc. is entitled to be paid a fee of no less than $937,500 from Defendant Simpson Thacher & Bartlett LLP.

50.     Defendant Simpson Thacher & Bartlett LLP has refused to pay Plaintiff Boston Executive Search Associates, Inc. for its services.

51.     By reason of the forgoing, Plaintiff Boston Executive Search Associates, Inc. has been damaged in an amount to be determined at trial, believed to be in excess of $937,500, representing 25% of Attorney Torkin's first-year compensation.

## SECOND CLAIM FOR RELIEF
## (UNJUST ENRICHMENT)

52.     Plaintiff Boston Executive Search Associates, Inc. restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

53.     By introducing Attorney Michael Torkin to Defendant Simpson Thacher & Bartlett LLP, Plaintiff Boston Executive Search Associates, Inc. conferred a measurable benefit upon Defendant, which was able to utilize Attorney Torkin's services and client base to increase substantially its profits and to expand its business.

54. Plaintiff Boston Executive Search Associates, Inc. and Defendant Simpson Thacher & Bartlett LLP both intended that Plaintiff Boston Executive Search Associates, Inc. be compensated for the benefits conferred.

55. Defendant Simpson Thacher & Bartlett LLP has failed and refused to compensate Plaintiff Boston Executive Search Associates, Inc. for any of the benefits conferred upon it.

56. Defendant Simpson Thacher & Bartlett LLP has retained such benefits in circumstances in which, in equity and good conscience, should be paid to Plaintiff Boston Executive Search Associates, Inc., and thus has been unjustly enriched.

57. Plaintiff Boston Executive Search Associates, Inc. has been damaged by Defendant Simpson Thacher & Bartlett LLP's unjust enrichment.

58. By reason of the forgoing, Plaintiff Boston Executive Search Associates, Inc. has been damaged in an amount to be determined at trial, believed to be in excess of $937,500, representing 25% of Attorney Torkin's first-year compensation.

### THIRD CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

59. Plaintiff Boston Executive Search Associates, Inc. restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

60. Defendant Simpson Thacher & Bartlett LLP promised and agreed that if Plaintiff Boston Executive Search Associates, Inc. introduced it to a potential lateral partner candidate whom Defendant subsequently hired, Defendant would pay a fee to Plaintiff Boston Executive Search Associates, Inc. for its services.

61. In reliance on Defendant Simpson Thacher & Bartlett LLP's promises and agreements, Plaintiff Boston Executive Search Associates, Inc. introduced Attorney Michael

Torkin to Defendant as a potential lateral partner candidate

62. Plaintiff Boston Executive Search Associates, Inc.'s reliance on Defendant Simpson Thacher & Bartlett LLP's promises and agreements was reasonable.

63. Plaintiff Boston Executive Search Associates, Inc. and Defendant Simpson Thacher & Bartlett LLP entered into a contract whereby Defendant agreed to pay Plaintiff a fee for its services in introducing lateral partner candidates who were hired by Defendant.

64. In breach of the aforesaid agreement, Defendant Simpson Thacher & Bartlett LLP has failed and refused to pay Plaintiff Boston Executive Search Associates, Inc. its fee for procuring Attorney Michael Torkin as a lateral partner hired by Defendant Simpson Thacher & Bartlett LLP.

65. Plaintiff Boston Executive Search Associates, Inc. has suffered substantial damage as a result of Defendant Simpson Thacher & Bartlett LLP's breach of contract and its failure to pay a fee to the Plaintiff.

66. By reason of the forgoing, Plaintiff Boston Executive Search Associates, Inc. has been damaged in an amount to be determined at trial, believed to be in excess of $937,500, representing 25% of Attorney Torkin's first-year compensation.

## DEMAND FOR TRIAL BY JURY

Plaintiff Boston Executive Search Associates, Inc. hereby demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff Boston Executive Search Associates, Inc. respectfully requests that this Court grant it the following relief:

1. That judgment be entered in favor of Plaintiff Boston Executive Search Associates, Inc. on the First, Second, and Third Claims for Relief against Defendant Simpson Thacher &

Bartlett LLP in the amount of no less than $937,500, plus interest;

    2.    For the costs and disbursements of this action, together with reasonable attorneys' fees; and

    3.    For such other and further relief as is just and proper.

Dated: New York, New York
        December 27, 2017

                      **DILWORTH PAXSON LLC**

                By: _____
                      Ira N. Glauber (8383)
                      99 Park Avenue, Suite 320
                      New York, New York 10016
                      (917) 675-4252
                      *Attorneys for Plaintiff Boston Executive*
                      *Search Associates, Inc.,*

**OF COUNSEL:**

Douglas W. Salvesen, Esq.
YURKO, SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, Massachusetts 02113
(617) 723-6900