# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number
+1-212-455-2472

E-mail Address
aturner@stblaw.com

August 13, 2018

VIA EMAIL                                   **CONFIDENTIAL**

Re:   Boston Executive Search Associates, Inc. v. Simpson Thacher & Bartlett LLP,
      Case No. 1:17-cv-10123-LGS

Honorable Lorna G. Schofield
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Dear Judge Schofield:

Defendant Simpson Thacher & Bartlett LLP ("Simpson Thacher") writes pursuant to Rule III.A.1 of this Court's Individual Rules in response to Plaintiff Boston Executive Search Associates, Inc.'s ("ESA") August 6, 2018 letter requesting a pre-motion conference (the "Letter").

ESA challenges the privileged status of 28 emails between Simpson Thacher attorneys and its designated internal firm counsel, Lynn Neuner and J. Alden Millard, Jr., evaluating and determining the firm's response to ESA's assertion of a claim for a fee that led to this lawsuit. ESA contends, without any factual basis, that the communications were not made for the purposes of providing or soliciting legal advice. Letter at 1. But the circumstances, and the communications themselves, demonstrate to the contrary. Indeed, one might conclude that the privileged nature of these documents is the very reason ESA seeks them; to pry into Simpson Thacher's evaluation of ESA's claim to try to obtain a strategic advantage in this case.

### 1. The Challenged Communications Are All Privileged.

The attorney-client privilege protects from disclosure "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). The privilege equally applies where an attorney serves as inside counsel to a law firm. *See, e.g.*, *E.E.O.C. v. Kelley Drye & Warren LLP*, 2011 WL 280804, at *2–3 (Jan. 20, 2011); *Lama Holding Co. v. Shearman & Sterling*, 1991 WL 155052, at *1 (Jun. 17, 1991). For communications with inside counsel who also serve a business role, the question is "whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice." *Erie*, 473 F.3d at 419 (citation omitted). To answer this question, courts "consider whether the predominant purpose of the communication is to render or solicit legal advice," *id.* at 420, which is generally the case where "[c]ommunications from an attorney to a client deal[ ] with the substance

Simpson Thacher & Bartlett LLP

August 13, 2018                                                                              Honorable Lorna G. Schofield

of imminent litigation . . . " *Rossi v. Blue Cross and Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 594 (1989).[1]

    The context of the challenged emails here makes clear that they are privileged.  On November 3, 2017, it was publicly reported that Michael Torkin had joined Simpson Thacher as a partner in its Bankruptcy and Restructuring Practice.  The same day, an ESA recruiter who six months earlier had sent to Sandeep Qusba, Head of Simpson Thacher's Bankruptcy and Restructuring Practice, the public biography of Mr. Torkin and had made a few related telephone calls, telephoned to say he had seen the news and that ESA expected to be paid a fee.  Ex. 3, Darcy Dep. Tr. 141:7–142:17.  Mr. Qusba responded that Simpson Thacher had never agreed or expected to pay ESA a fee for its minimal activities here, and that no fee had ever been discussed.  Ex. 2, Qusba Decl. ¶ 3.  Later the same day, ESA's CEO emailed Mr. Qusba, reiterating ESA's fee request and attaching an invoice for almost one million dollars.  Ex. 2, Qusba Decl. ¶ 3; Ex. 4, ESA-STB0000100–104.  These are quintessential attorney-client communications, satisfying all three elements for the privilege to apply.

    **2.   ESA's Arguments Challenging Privilege All Fail.**

    ESA's contention that the challenged communications are purely "administrative" and are "presumptively not requests for legal advice," is rooted in its baseless allegation that Simpson Thacher's appointment of its two Co-Administrative Partners to also serve as firm counsel to advise on claims just like this one was not "*bona fide*," and was instead "a preemptive attempt to cloak their administrative activities from disclosure."  Letter at 3.  Founded in speculation and innuendo, ESA's accusations are false and should be rejected.

    *First*, ESA claims that the lack of any internal Simpson Thacher document "describing the duties" of firm counsel casts doubt on whether such a position exists.  ESA's doubts are unfounded.  Simpson Thacher produced the July 2016 memo from the Chair of the Executive Committee confirming Ms. Neuner and Mr. Millard's retention as firm counsel in their capacities as Co-Administrative Partners.[2]  Ex. 1, Neuner Decl. ¶ 4; Ex. 5, STB-ESA 0001681.  The fact that no additional document describes specific duties associated with that role is of no moment; as with any

---

[1] As reflected on Simpson Thacher's privilege log, Ex. A to ESA's letter, several documents are also protected from production by the attorney work product doctrine (listed as "WP"), as they comprise materials prepared by counsel in anticipation of litigation.

[2] The memo also confirms the retention of four other attorneys responsible for roles involving client conflicts and ethics issues.

internal counsel, the role depends on the legal issues facing the firm at any particular time, and need not be committed to writing in order to be real. The kinds of tasks that fall within that role are described in the accompanying declaration of Ms. Neuner. Ex. 1, Neuner Decl. ¶ 3.

*Second*, ESA argues that there ought to be internal Simpson Thacher documents informing employees of the identity of firm counsel. New partners are informed at orientation of the Co-Administrative Partners' roles and when to contact them, including with respect to any potential litigation risks. Ex. 1, Neuner Decl. ¶ 5. Whether Simpson Thacher ought to also issue written communications, as ESA suggests, or instead rely on the new partner orientation process and the institutional knowledge of its partners that the Co-Administrative Partners also serve as firm counsel, is a matter of internal firm management, and does not bear on whether privilege applies.

*Third*, the fact that Mr. Torkin, who joined the firm last October, testified that he suspected there was an individual at the firm who is designated as firm counsel, but did not know who that person was, does not disprove the existence of firm counsel.[3] Ex. 6, Torkin Dep. 116:13–117:4. If a partner does not know who is firm counsel, they ask a colleague. Ex. 1, Neuner Decl. ¶ 5.

*Fourth*, the fact that the role of firm counsel is not described on Simpson Thacher's public website is irrelevant, and does not make it "secret," as ESA contends. The identity of internal firm counsel is not something Simpson Thacher advertises to potential clients or potential employees, who are the primary audience for its website.

*Fifth*, ESA's argument that it would not be "sensible" for a partner who became aware of a potential claim against the firm to notify *both* partners who serve as firm counsel is mystifying. Including both partners on such communications would seem to be the definition of prudence.

Even if ESA were right (it is not) that the communications here served an administrative as well as a legal purpose, there is no requirement that an attorney must be acting "only as 'firm counsel'" for the privilege to attach. *See, e.g., U.S. v. Davis*, 131 F.R.D. 391, 401 (S.D.N.Y. 1990) ("The mere fact that business advice is given or solicited does not . . . automatically render the privilege lost . . . ."). Ms. Neuner is a highly experienced commercial litigator who is continuously hired by clients to assess litigation threats and advise organizations on their best response, including with respect to alleged breach of contract claims. She provides the same client-advising service to the firm in her Co-Administrative Partner role. The communications here plainly sought and rendered legal advice, and as such are protected by attorney-client privilege.

### 3. *In Camera* Review of the Challenged Communications is Unnecessary.

ESA requests that the Court conduct an *in camera* review of the 28 communications. Whether to conduct such a review is entirely within the Court's discretion, and is unnecessary where, as here, a party has made an adequate showing that the communications are privileged. *See Gucci Am., Inc. v. Exclusive Imports Intern.*, 2002 WL 1870293, at *7 (S.D.N.Y. Aug. 13, 2002) (finding it within the court's discretion not to conduct an *in camera* review where counsel's representations were sufficient to support privilege). The Court is of course welcome to review the documents, which plainly show the privileged and work product nature of the communications.

---

[3] ESA mischaracterizes Mr. Torkin's testimony on this point. *See* Ex. 6, Torkin Dep. 116:13–117:4.

Simpson Thacher & Bartlett LLP

August 13, 2018 | Honorable Lorna G. Schofield

      Accordingly, Simpson Thacher respectfully requests that the Court deny ESA's letter motion. Counsel looks forward to addressing any questions the Court may have at the August 21, 2018 conference.

                                  Respectfully submitted,

                                  Alan Turner

cc:    Counsel for Plaintiff ESA, via Email

CONFIDENTIAL